171     647
d178  1612

# ERICKSON v. KANSAS CITY, OSCEOLA AND SOUTHERN RAILWAY COMPANY, Appellant.

### In Banc, February 6, 1903.

1. **Contributory Negligence:** POSITION OF DANGER: ASSUMPTION OF RISK: FLAGMAN: STREET CROSSING.   Although a flagman stationed at a street crossing to signal street cars, railroad trains, and pedestrians, can not recover, if his injury in being struck by a tender, was the result only of the risk incident to a faithful discharge of the duty the law imposed on him, yet if the negligence of the company in running its engine and tender was the proximate cause of his injury, the fact that he was in a position of danger can not be ascribed to him as negligence contributing to the injury.

2. ————: QUESTION FOR JURY OR COURT.   If by plaintiff's case his conduct is shown to have been so negligent that there can be no two opinions about it among reasonable men, then, whether or not that conduct amounted to contributory negligence, is one for the court; but if it is such as reasonable men may differ about, it is a question for the jury.

3. ———: ———: ASSUMPTION OF RISK: CASE STATED. Several rail-
roads used the railroad track of one of them at a street crossing
where they crossed a cable line, and there plaintiff was stationed
to give signals to trains and street cars to cross, and after turning
to look in the direction from which was rapidly coming the switch
engine which injured him, and being unable to discover it, there
being no headlight or bell, plaintiff, standing near the track, turned
to give a signal to another train, and while doing so was struck
by the backing tender. His testimony tends to show that his posi-
tion on the track was where he could best see the switch engine
and his signals be best seen, and, further, that under the rules no
switch engine had a right to come on the track until the other train
had reached its station. *Held,* that defendant was not entitled to
an instruction that plaintiff was guilty of contributory negligence
in standing unnecessarily near the track, but, under the circum-
stances of the case, the question was one for the jury.

4. ———: NEGLIGENCE: FELLOW-SERVANTS: NO COMMON MASTER. If
the plaintiff flagman and the engineer who ran the train over him
were not servants of the same common master, they were not fellow-
servants.

5. ———: INSTRUCTION: MODIFIED TO CORRESPOND WITH PLEADINGS.
Where plaintiff alleged four grounds of defendant's negligence, to-
wit, speed in excess of the rate permitted by ordinance, no head-
light on train, failure to ring bell and failure to sound whistle,
and all reference to a failure to sound the whistle was, on motion
of defendant, stricken out, defendant can not complain that the
court afterwards struck out of its instructions all reference to the
sounding of the whistle.

6. ———: ———: LOOKING AND LISTENING. A flagman, placed in a
position of peril and upon whose faithful performance of his duty
daily depends the lives of many persons, is bound to observe the
care that an ordinarily prudent man under the same conditions
would observe for his own protection; but his own protection is not
the only or the chief obligation resting upon him, and an instruction
that said he should have used all reasonable care to protect himself
regardless of the lives of others was properly refused, as was also
one to the effect that "if at any time before being struck he could
either by looking or listening have known of the approach of de-
fendant's train in time to have avoided being hit by it," he could
not recover.

7. ———: ———: NEGLIGENCE: VARIOUS GROUNDS: NECESSARY PROOF.
Where plaintiff charges his injuries to three acts of negligence of
defendant, to-wit, the running of its trains at a greater rate of
speed than that permitted by ordinance, the failure to have a
headlight on the train, and failure to ring the bell, a proof of any
one of them as the proximate cause of his injury, is sufficient to

entitle him to recover, if at the time of the injury he was in the exercise of ordinary care and prudence.

8. ———: INSTRUCTIONS: ERROR IN APPELLANT'S BEHALF. Where defendant in a damage suit is not entitled to a peremptory instruction in his behalf, the giving of such instruction will not entitle him on appeal to a reversal of a judgment for respondent, if the jury were properly instructed by others given, and it is apparent from the record that they did not understand that they were so instructed.

9. ———: ORDINANCES: ACCEPTANCE BY RAILROAD. Where no exception was saved to the admission of ordinances in evidence, and the point was not made that defendant had not accepted the ordinances or agreed to be bound by them, the point is not available to it on appeal.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* ·Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) The court erred in overruling defendant's demurrer. (a) Because the alleged acts of negligence on defendant's part are not shown to be the proximate cause of the injury. (b) The evidence shows contributory negligence of the most flagrant character on the part of the plaintiff. Settle v. Railroad, 127 Mo. 336; Hanlon v. Railroad, 104 Mo. 381; Kelley v. Railroad, 75 Mo. 138; Davies v. Railroad, 159 Mo. 6; Peterson v. Railroad, 156 Mo. 560; Jackson v. Railroad, 157 Mo. 645; Prewitt v. Railroad, 134 Mo. 627; Schmitt v. Railroad, 160 Mo. 57; Tanner v. Railroad, 161 Mo. 497; Hook v. Railroad, 162 Mo. 580; Payne v. Railroad, 136 Mo. 562; Huggard v. Railroad, 134 Mo. 672; Vogg v. Railroad, 138 Mo. 180; Kelsay v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566. The ordinances on which this action is predicated have no application to the case at bar, and were not shown to be binding on defendant. Rohback v. Railroad, 43 Mo. 187; Holwerson v. Railroad, 157 Mo. 245. The position assumed by the plaintiff was a voluntary one, and he can not recover. Moore v. Railroad, 87 Va. 384; Keyes v. Railroad, 3 Atl. Rep.

15; Harris v. Railroad, 40 Mo. App. 262; Ryall v. Railroad, 76 Cal. 474; Hoffinger v. Railroad, 43 Minn. 503; Lord v. Railroad, 12 Col. 390; Clark v. Boston, 110 Mass. 1; Lenix v. Railroad, 76 Mo. 86.    (2)    There can be no recovery.    Plaintiff and the engineer were fellow-servants.    Mills v. Railroad, D. C. 314; McDonald v. Railroad, 138 N. Y. 663; Railroad v. Tanky, 26 Ill. App. 99; Toms v. Railroad, 70 Hun 84.    (3)    The court erred in refusing to give instructions numbered one and two as prayed by defendant.    These instructions were to the effect that although the bell was not rung, yet if the whistle was sounded, that was sufficient.    Loyd v. Railroad, 128 Mo. 595; Turner v. Railroad, 74 Mo. 602.    (4)    Instructions numbered six and seven asked by defendant ought to have been given.    Most clearly it was the duty of the plaintiff to have kept a lookout for his own safety, and failure on his part was contributory negligence.    Carrol v. Railroad, 107 Mo. 635; Laeffler v. Railroad, 96 Mo. 267; Harlan v. Railroad, 64 Mo. 480; Boyd v. Railroad, 105 Mo. 371; Zimmerman v. Railroad, 71 Mo. 476.    (5)    The court erred in overruling defendant's motion for a new trial.    The verdict was against the law as declared by the court.    Bungenstock v. Drainage District, 163 Mo. 223.

*I. N. Watson* for respondent.

(1)    (a)    The evidence of plaintiff showed defendant guilty of negligence; *first,* in running at an unlawful rate of speed; *second,* in failure to ring bell as required by law; *third,* in running without any headlight as required by law.    (b)    Plaintiff was injured by reason of such negligent acts; because he looked up the south track a half minute before, and saw no headlight or other indications of a train, and relying on that fact that no train was on that track, stood where he did in the performance of his duties.    (2)    A failure to give statutory signals required by a municipality at street crossings is negligence *per se*.    Karla v. Railroad, 55 Mo. 476; Keim v. Railroad, 90 Mo. 314; Eswin v. Railroad,

96 Mo. 514; Kenney v. Railroad, 105 Mo. 270; Weller v. Railroad, 64 S. W. 164; Railroad v. Boggs, 101 Ind. 522; Railroad v. Ryan, 17 Col. 98; Railroad v. Lee, 92 Ala. 271; Sherm. & Red. Neg. (4 Ed.), sec. 458; Purnell v. Railroad, 29 S. E. 953; Stanley v. Railroad, 27 S. E. 27. (3) Plaintiff was not guilty of contributory negligence as a matter of law, and that issue was properly submitted to the jury. Keim v. Railroad, 90 Mo. 314; Sullivan v. Railroad, 97 Mo. 113; Huckshold v. Railroad 90 Mo. 548; Bluedorn v. Railroad, 108 Mo. 439; Bluedorn v. Railroad, 121 Mo. 528; Kennayde v. Railroad, 45 Mo. 260; Dixon v. Railroad, 109 Mo. 258; Weller v. Railroad, 64 S. W. 146; Lamb v. Railroad, 48 S. W. 659; Baker v. Railroad, 48 S. W. 840; Railroad v. Carr, 35 Ind. 510; Railroad v. Dignan, 56 Ill. 487; Railroad v. Kernochan, 55 Oh. St. 306; Sullivan v. Railroad, 112 N. Y. 643; Hayes v. Railroad, 74 Fed. 279; Railroad v. Herchiskel, 74 Fed. 460; Lampkin v. McCormick, 29 So. 955; Driscoll v. Railroad, 97 Cal. 553; Goodfellow v. Railroad, 106 Mass. 461; Schlereth v. Railroad, 96 Mo. 514; 1 Thomp. on Neg. 461. (4) This case falls within that class of cases where defendant by its negligence threw the plaintiff off his guard, and can not urge contributory negligence of plaintiff to escape liability for its own negligence. Kennayde v. Railroad, 45 Mo. 260; Beach on Contributory Neg. (2 Ed.), sec. 67; Keim v. Railroad, supra; Bluedorn v. Railroad, supra; Sullivan v. Railroad, supra; Purnell v. Railroad, 29 S. E. 953; Stanley v. Railroad, supra; Hayes v. Railroad, 74 Fed. 279. (5) Plaintiff was not a fellow-servant with defendant's employees. There was no common master or common employment. Beach on Contributory Neg. (2 Ed.), secs. 338 and 341; Swanson v. Railroad, 47 L. J. Exch. N. S. 37; Sherman and Redf. Neg. (4 Ed.), secs. 224 and 225; Brown v. Railroad, 157 Mass. 399; Zeigler v. Railroad, 52 Conn. 543; Barry v. Railroad, 42 Ia. 246; Railroad v. Jones, 75 Tex. 151; Rose v. Railroad, 2 Hurlst. & N. 728; Murphy v. Railroad, 44 Hun 241; Sullivan v. Railroad, 112 N. Y. 643; Warburton v. Railroad,

L. R. Q. Exch. 30; Smith v. Railroad, 19 N. Y. 127; Sawyer v. Railroad, 27 Vt. 370; Snow v. Railroad, 8 Allen 441; Strader v. Railroad, 86 Hun 613; Railroad v. Easton, 2 Tex. Civ. App. 378; Philips v. Railroad, 64 Wis. 475; Tierney v. Railroad, 85 Hun 146; Cobb v. Railroad, 149 Mo. 609. (6) There was no objection made in trial court that the ordinances of Kansas City, read in evidence, were not binding on defendant, but the objection admitted the ordinances were binding on defendant's employees. (7) The court committed no error in refusing instructions numbered 1 and 2, asked by defendant. They required plaintiff to prove acts of negligence not alleged in his petition in order that he might recover in this action. (8) There was no error in refusing instructions numbered 6 and 7, asked by defendant. (9) Instructions numbered 3 and 4, given on behalf of defendant, were erroneous, and stated the law more favorable to defendant than it was entitled to, and should not have been given.

*Johnson & Lucas* for appellant in reply.

(1) The evidence did not establish the fact that the speed of the train was in excess of six miles an hour, and for that reason instruction numbered 2 ought not to have been given for plaintiff. A few pertinent authorities may be suggestive. Hook v. Railroad, 162 Mo. 580; Schmitt v. Railroad, 160 Mo. 57; Peterson v. Railroad, 156 Mo. 560; Lien v. Railroad, 79 Mo. App. 475. (2) And the evidence wholly failed to show that the speed of the train was the proximate cause of the injury. Schmitt v. Railroad, 156 Mo. 560; Wallace v. Railroad, 74 Mo. 594; Central Law Journal, 51-243. (3) It was error to submit the question of headlight on the record. Weltmer v. Bishop, 71 S. W. 169; Hook v. Railroad, 162 Mo. 580; Schmitt v. Railroad, 160 Mo. 57. The evidence did not show that the presence or absence of a headlight was the proximate cause of the injury. Schmitt v. Railroad, 156 Mo. 560. (4) On the record as submitted at the close of the whole case defendant's

peremptory instruction should have been given: first, for the reason that no negligence was shown against it on the trial; second, the plaintiff was guilty of such contributory negligence as will preclude a recovery. Weltmer v. Bishop, 71 S. W. 169; Schmitt v. Railroad, 156 Mo. 560. (5) It seems to counsel for appellant that the peremptory instruction in this case ought to have been given, indeed, it is more difficult to understand why the trial court did not sustain the motion for a new trial even after refusing the peremptory instruction. It will be seen that plaintiff, had he looked, could have seen, and had he listened, heard, the approaching train and avoided injury. Unless the law of contributory negligence has been abolished by judicial interpretation, this plaintiff should not recover. (a) The position of the plaintiff, and the length of time of occupancy thereof, more clearly indicate his own negligence. (b) Plaintiff knew that this train by which he was struck appeared at the point of accident every night. (c) He knew that trains were passing and repassing at all times both night and day. (d) Plaintiff gave signals that were understood and known, and were intended for trains to cross Grand avenue, and if any injury was received it was on account thereof. It will appear from all the evidence that respondent was guilty of flagrant negligence and carelessness on his part, such as to preclude a recovery. Beach, Cont. Neg. (3 Ed.), sec. 191, p. 284; Holland v. Railroad, 5 McCary 549. It will not do for plaintiff to say he did look. The physical facts show otherwise, and the evidence of his witnesses conclusively show that when they looked they saw. And at this time plaintiff could have taken a single step and been in a place of safety. Hook v. Railroad, 162 Mo. 580; Hogan v. Railroad, 150 Mo. 36; Culbertson v. Railroad, 140 Mo. 35; Nixon v. Railroad, 141 Mo. 425. Therefore, even though defendant might have been guilty of negligence if it did not ring bell, nor have headlight, or was running in excess of rate of prescribed speed, plaintiff, being in the absence of reasonable care on his part, could not recover. Culbert-

son v. Railroad, supra; Nixon v. Railroad, supra. Plaintiff had full knowledge of the peril of his situation, and had he given heed to his dangerous surroundings, would have avoided injury. McCarty v. Hotel Co., 144 Mo. 397; Hurst v. Railroad, 163 Mo. 309.

## In Banc.

PER CURIAM.—The following opinion by VALLIANT, J., in Division One, is adopted as the opinion of the court in Banc. *Brace, Gantt, Burgess, Fox* and *Valliant, JJ.*, concurring; *Robinson, C. J.*, and *Marshall, J.*, dissenting.

## In Division One.

VALLIANT, J.—Plaintiff recovered judgment for $6,000 as damages for personal injury suffered through the alleged negligence of the servants of defendant in operating a locomotive engine, from which judgment defendant appeals.

The petition is to the following effect. The defendant is a railroad corporation running its engines and cars in Kansas City on tracks of the Kansas City Suburban Belt Railway Company, called the Belt road, from a point in the intersection of Wyandotte and Second streets along Second street eastwardly, crossing Main and Walnut streets and Grand avenue. Other railroad companies besides the defendant operate their trains over this Belt road. The Metropolitan Street Railway Company owns and operates a single-track cable road crossing the tracks of the Belt road on Grand avenue at right angles. On November 17, 1896, plaintiff was in the employ of the Belt company as flagman, stationed at this crossing; his duties were to flag all trains passing there. At that time there was in force an ordinance of the city which provided that no railroad engine should be run within the city limits at a greater rate of speed than six miles an hour, and that

no one in charge of such locomotive should allow it to be run between sunset and sunrise without having a large lamp or headlight or lantern conspicuously placed in front in the direction in which it is running, whether forward or backward.    About ten o'clock at night on the date above mentioned plaintiff was in his place of duty at the crossing engaged in flagging two trains going west on the north track of the Belt road, when he was struck by an engine of the defendant going east on the south track, knocked down, run over, permanently injured and disabled for life.    The injuries were the result of the negligence of the defendant's servants in charge of the engine, in this: running the engine at a greater rate of speed than six miles an hour, without having any large lamp, headlight or lantern conspicuously displayed in front in the direction in which the engine was going and without ringing a bell.

The averment in the original petition as to this last point was that the engine was being run "without ringing any bell or sounding any whistle on approaching said street crossing, as was its duty to do." But on motion of the defendant all of that averment after the word "bell" was stricken out.

The answer was a general denial and a plea that the plaintiff was himself guilty of the negligence which wholly occasioned his injuries, by attempting, without any necessity for doing so, to cross the railroad tracks in front of a moving train with full knowledge of the danger of the situation. The reply was a general denial.

The evidence of the plaintiff tended to prove as follows: The plaintiff was the employee of the Belt company; his duty was to flag all trains at that crossing. On the night in question, about ten o'clock, he was standing in the street car track south of and near the south track of the Belt road. He had just flagged a street car to stop, and had flagged a passenger train of the Chicago & Great Western (called the Maple Leaf) road to come on. This Maple Leaf train was coming east. It had to cross on the north track to the east of Grand

avenue and then switch back west to reach its station at Second and Wyandotte streets. Under the rules governing the operation of the trains, this train at that time had the right-of-way and no freight train or switch engine could come in on the south track without interfering with its movement. The Maple Leaf train passed east over the crossing, then the plaintiff stepped out of the street car track and flagged the street car to cross to the north, which it did; there was another street car behind that one, which the flagman held for the time, and as soon as the first street car passed over the crossing he stepped back on the street car track very close to the south track, turned to the east and gave the signal to the Maple Leaf train to come back, which it did. There was another train belonging to what they called the Air Line behind the Maple Leaf train, going in the same direction, to which the plaintiff also signaled to come on, and while he was in the act of giving that signal a switch engine of the defendant coming from the west on the south track struck him, knocked him down, and inflicted serious injuries. The plaintiff's position when he stopped the first street car and flagged the Maple Leaf train to come east over the crossing, was in the street car track near the south rail of the south track of the Belt road facing west. From that position he looked and would have seen the defendant's engine coming on the south track if there had been a headlight on it, but there was none. From the time he turned his face east to signal the Maple Leaf train to come back until he was struck, was, according to his testimony, not more than half a minute, though one of the plaintiff's witnesses on cross-examination said: "Well, as near as I can tell it was between one and two minutes." The engine that struck the plaintiff was running backward with tender in front and the headlight was at the front end of the engine. It was down grade, the engine was running fast, the witnesses varied in their estimate from ten to thirty miles an hour. It came down the grade without making any noise and no bell was rung. The night was dark and there was no street light at the crossing.

On the part of the defendant the evidence as to rate of speed, absence of headlight, and failure to ring the bell was contradictory to that of the plaintiff. After the city ordinances referred to in the petition had been read in evidence by the plaintiff, the defendant moved to strike them out "for the reason that they are not made by their terms applicable to anybody but the employees of the road." The motion was overruled.

At the close of the plaintiff's evidence and again at the close of all the evidence the defendant asked an instruction to the effect that the verdict should be for the defendant, which instruction the court refused and defendant excepted.

Appellant in its assignment of errors and brief insists that the judgment should be reversed on the following grounds: First, the court erred in refusing the instruction in the nature of a demurrer to the evidence. Second, plaintiff can not recover because he and the engineer in charge of the defendant's locomotive were fellow-servants. Third, the court erred in refusing instructions one and two asked by defendant which were to the effect that "although the bell was not rung, yet if the whistle was sounded that was sufficient." Fourth, instructions six and seven asked by defendant should have been given. These instructions will be set out hereinafter. Fifth, the motion for a new trial should have been sustained because the verdict was against the law as declared by the court.

I. In support of the first assignment of error the learned counsel in their brief say: "Defendant's first contention being that even admitting excessive speed, absence of headlights, and failure to ring bell, under the evidence plaintiff can not recover. Had he stood six inches from where the accident occurred he would not have been struck." We do not understand the counsel in their brief to claim that the evidence did not tend to show negligence on the part of defendant's servants in charge of the engine, but for their demurrer to the evidence they rely on the fact that the plaintiff's position

Vol 171 mo—42.

was one of danger into which he had unnecessarily put himself and was therefore guilty of contributory negligence.

It may be doubted if the answer on this point amounts to a plea of contributory negligence. The averment is that if the plaintiff sustained injuries, "it was occasioned wholly on account of his negligence," etc. If that is so it disproves the statements in the petition that the defendant was guilty of negligence, and if the rule of code pleading, that any fact which goes to disprove an essential statement in the plaintiff's petition may be proven under the general denial (Pattison, Mo. Code Pl., 551-566; Pomeroy, Code Rem., sec. 657, et seq.), applies in a case like this, then this plea, following as it does a general denial, presents no new issue. The case does not require a decision on that point, however. The statement in the plea as constituting the plaintiff's negligence is that the plaintiff attempted to cross the railroad in front of a moving train with full knowledge of the danger. If that is to be taken as a plea of contributory negligence, the burden was on the defendant to prove it, and there was no such evidence. But if the defendant's view of this part of the case is correct, the demurrer to the evidence should have been sustained even if there had been no plea of contributory negligence, because that which the defendant really relies on as constituting contributory negligence arises out of the plaintiff's own evidence, that is, that the plaintiff stood near enough to the track to be struck, with his back to the west, from which direction trains were liable to come.

The fact that the plaintiff was in a position of danger is manifest from the result, and the fact that he would not have been struck by the engine if he had been a few feet farther south of the track is also self-evident. But the question is, was it negligence in him to be where he was under the circumstances? He testified that when a train was coming from the east he usually stood on the north side of the track because the engineer was on that side and could better see the signals, but when

a train was coming from the west his proper position
was on the south of the tracks for the same reason, and
also, as the street cars passed in only one direction there
(north), he could then better govern their movements
by standing in the cable track south of the crossing. He
also testified that when he was struck he was standing
where he could best signal the trains and from which
point his signals could best be seen.   He also said that
looking west, as he did, from where he stood before he
turned, he would have seen the train if it had had a
headlight, as far off as Delaware street.   As to his
duties he said, ''My duties were to protect everything
passing by that crossing—trains and street cars, and
the public—pedestrians going back and forth; I was to
watch out for them all.''   He certainly was at the mo-
ment of the accident doing his full duty in regard to the
three trains in sight seeking to cross, the Maple Leaf,
the Air Line, and the cable train; whether in so doing
he was as mindful as the law required him to be of his
own safety, is the question the defendant raises. His
was necessarily a position of danger as well as of great
responsibility. If the risk he took of his own safety was
only such as faithful discharge of his duties required,
then he was not, in the eyes of the law, negligent, and
on the other hand if the accident was the result of that
risk only, he can not recover because it was a risk inci-
dent to his employment which he assumed when he
entered the service.   But if, under those circumstances,
the negligence of the defendant became the proximate
cause of the accident, the fact that the plaintiff was in a
position of danger can not be ascribed to him as negli-
gence contributing to the injury.   His conduct in order
to come under the condemnation of the law of negli-
gence, must have been something more than taking a
risk which a faithful discharge of his duties required.
The question of whether a plaintiff's conduct amounts
to contributory negligence is sometimes a question for
the court and sometimes a question for the jury.   If
in the presentation of the plaintiff's case his conduct is
shown to have been negligent to such a degree as that

there can be no two opinions about it among reasonable men, it is a question for the court. But if it is such as that reasonable men may differ about it, it is a question for the jury.

The defendant says plaintiff was standing unnecessarily near the south track, with his back to the west, from which point a train was liable to come. The plaintiff's testimony tends to contradict that statement in two particulars, that his position was where he could best see and his signals be best seen, that under the rules governing the movements of trains then and there, no switch engine had a right to come on the south track until the Maple Leaf train had reached the Wyandotte station. But taking the defendant's statement of the situation, it still leaves it an open question of fact whether the plaintiff was failing to observe ordinary care. If the engine which did the mischief had come down the track at the rate of only six miles an hour with headlight conspicuously displayed, the stream of light would doubtless have flashed down the track past where the plaintiff was standing and he might have seen it in time to have stepped aside, though his face was to the east. Was it unreasonable for the plaintiff after he had looked to the west, and had seen no headlight, to take the position he did, trusting that the switch engine would not come, when, under the rules, it had no right to come, or that if it should come it would not come swiftly, silently and in darkness? The plaintiff said that from the time he turned his face east it was not over a half minute until he was struck; one of his witnesses on cross-examination said it was one or two minutes. When it comes down to the point of estimating duration of time by one or two minutes or the fraction of a minute, under exciting circumstances, the testimony of the average witness as to accuracy is of little value.

Under the circumstances of this case we are of the opinion that the most that can be said on this point in favor of the defendant is that it was a question of fact for the jury, and since the court submitted it to the jury under unobjectionable instructions and the jury

have rendered their verdict, that is the end of it.

II.  The point is presented that the plaintiff and the engineer were fellow-servants.  There is, however, one essential to the relation of fellow-servants that is missing—there was no common master.  The plaintiff was the servant of the Belt company, from whom he received his orders and to whom he was answerable. The engineer on the other hand was the servant of the Kansas City, Osceola and Southern Company from whom he received his orders and to whom he was answerable.    Under such circumstances they were not fellow-servants.    [Beach on Contrib. Neg. (3 Ed.), secs. 338 and 341; Shearman & Redf. on Neg. (5 Ed.), secs. 224 and 225.]

III.  The third point of appellant is thus stated in its brief: ''The court erred in refusing to give instructions numbered one and two as prayed by defendant.  These instructions were to the effect that although the bell was not rung, yet if the whistle was sounded it was sufficient.''

The instructions as asked were as follows:

''1.  The court instructs the jury that it devolves on the plaintiff to make out his case by a preponderance of the evidence, and before he can recover herein you must believe from the evidence that at the time of being injured he was in the exercise of ordinary care, that is, such care as a person of ordinary and reasonable prudence would exercise under like circumstances , and that while in the exercise of such care he was run upon and struck by an engine of the defendant, and at the time thereof the same was being run at a rate of speed in excess of six miles per hour, or that said engine had no headlight nor large lantern conspicuously placed in front of same facing the direction in which the same was moving, or that defendant's servants in charge of said train did not ring the bell on said locomotive, or sound the whistle thereof to notify the plaintiff of its approach, and unless you so believe you will find for the defendant.

''2.  If you shall believe from the evidence that at

the time of the injury to the plaintiff there was a head-light facing plaintiff on said engine conspicuously placed in front of the same facing the direction in which the same was moving, and that the bell was rung or whistle sounded, and that the train was not running at a rate of speed to exceed six miles an hour, your finding must be for the defendant.' '

These instructions were given as asked except that the words ''or sound the whistle'' in the first and ''or whistle sounded'' in the second were stricken out. The plaintiff had alleged in his petition in the beginning, four acts of the defendant as negligence: speed in excess of six miles an hour, no headlight, failure to ring the bell, or sound the whistle. On motion of the defendant the allegation as to failure to sound the whistle was struck out. The instructions as given required the plaintiff to prove one or the other of the three acts alleged as negligence and that it was the proximate cause of the accident, else the verdict should be for the defendant. But as the averment in the petition that the whistle was not sounded was struck out on the defendant's motion it had no right to an instruction indicating that the duty devolved on the plaintiff to prove that averment. The second instruction was to the effect that if the whistle was sounded the plaintiff could not recover. In their brief the learned counsel argue that if the plaintiff knew of the approach of the train, whether by the ringing of the bell or the sounding of the whistle, it was all the same in effect, and that is so. But that is not the effect of the instruction; it was if the whistle was sounded the plaintiff could not recover. Of course if the plaintiff knew the train was coming it is immaterial from what source he derived the knowledge. To say that the whistle was sounded is not the same as to say the plaintiff knew the train was coming. It would be difficult to believe that this plaintiff knew that that train was coming. The court did not err in modifying the instructions as asked.

IV. The sixth instruction refused is as follows:

''6. It was the duty of the plaintiff to look both

ways for the approach of trains, and to exercise all reasonable and ordinary care to avoid being struck by the same, and if at any time before being struck he could either by looking or listening have known of the approach of the defendant's train in time to have avoided the accident complained of, or occupied a place of safety in the discharge of his duties, then he is not entitled to recover in this cause, and your verdict should be for the defendant.''

The jury had already been instructed that it was the duty of the plaintiff to have exercised the degree of care that an ordinarily prudent man engaged in that business and under like circumstances would have exercised and that he could not recover if he failed to do so and if such failure contributed to the accident.

Now when this instruction says that ''it was the duty of the plaintiff to look both ways for the approach of trains and to exercise all reasonable and ordinary care to avoid being struck by the same,'' if it means more than the jury had already been instructed on that point, or if it means that he must use all reasonable care to protect himself regardless of his duty to protect the lives of other persons whose safety was in his hands, it means more than the law approves. The instruction in that connection goes on to say, ''And if at any time before being struck he could either by looking or listening have known of the approach of defendant's train in time to have avoided the accident,'' he cannot recover. That is to say, if by turning his back on the three trains that were watching to move on his signal and looking to the west he might have seen this engine of the defendant in time to have jumped out of the way before it struck him he cannot recover. The instruction is susceptible of that interpretation and was therefore properly refused. This man's office was one of peril and the lives of many persons depended daily on the faithful performance of his duty under dangerous conditions, and whilst he was bound to observe the care that an ordinarily prudent man under the same conditions would observe for his own

protection, yet his own protection was not the only or the chief obligation that rested upon him, and if in the faithful discharge of his duties he put the welfare of others before that of his own the law will not condemn him.

V. The seventh instruction refused was as follows:

"7. Although you may believe that the plaintiff did not signal the defendant's train, and that defendant crossed Grand avenue and struck plaintiff without having received any signal to cross the same; this fact alone will not authorize you to find a verdict for the plaintiff. Before he can recover he must have been in the exercise of ordinary care, and defendant's train must have been run at a rate of speed exceeding six miles an hour, without a headlight facing the plaintiff, and without warning given by defendant of the coming of the train, either by blowing the whistle or ringing the bell; if either warning was given of the coming of the train the plaintiff can not recover, and in no event can he recover if his position at the time contributed in anywise to his injury."

Under that instruction the plaintiff could not recover unless he proved all the acts of negligence charged and also that if the whistle was sounded he could not recover. What is said above in discussing the first and second instructions refused is applicable to this instruction.

VI. The contention that the motion for a new trial should have been sustained on the ground that the verdict is against the law as declared by the court, is founded on the following:

Among the instructions asked by the defendant were these two:

"3. The plaintiff under the law was charged with the exercise of ordinary care, and if you shall believe from the evidence that he stood on, or so near to, the south track of the railroad that a passing train struck him, and that a careful and prudent flagman would not, under like circumstances, have stood at said place, then

your finding must be for the defendant.

"4. Although the plaintiff may have been instructed to signal trains from the south side of the track, such instructions would not justify him in assuming, if he did assume, a dangerous position to flag the trains at the time of his injury, and if you believe that at the time he was struck by the train he was occupying a dangerous position, and that such position contributed in any manner to his injury, and that a careful and prudent flagman would not under like circumstances have occupied such a position, you will find for the defendant."

The court struck out of instruction 3 the words, "and that a careful and prudent flagman would not under like circumstances have stood at said place," and struck out of instruction 4 the words, "and that a careful and prudent flagman would not under like circumstances have occupied such a position," and gave the two instructions. The striking out of those words rendered the instructions equivalent to a peremptory direction to find for the defendant. They amounted to a declaration that if the plaintiff was standing near enough to the track to be struck by the passing train he was not entitled to recover. Counsel for appellant may well say the verdict of the jury is against the law as there declared by the court. In view of the other instructions given and those refused, and of the ruling of the court all through the trial, we are inclined to think there must have been some accident or oversight that left these two instructions in that form. But, however that may be, the instructions as given were erroneous and in conflict with the other instructions given.

It is the duty of a jury to obey the instructions of the court, even though they may be erroneous. If instructions happen to be in conflict with each other, the jury is not to blame if it follows the direction of either. In such case if a new trial should be granted it would be not on the ground of misconduct of the jury but of error in the instructions. The defendant was not entitled to a peremptory instruction for a verdict in its favor, and

we are satisfied from the whole record in this case that the jury did not understand that they were so directed. There were other instructions defining the issues and directing the jury as to the law and the case appears to have been tried in conformity to those instructions. The point presented that the verdict is against those two instructions is very technical and does not reach the merits of the case. This court is forbidden by law to reverse the judgment of any court "unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action." [Sec. 865, R. S. 1899.]

VIII. Lastly, it is said in the brief for appellant, though it is not assigned for error, that the motion for new trial should have been sustained because there was no evidence that the defendant ever accepted or agreed to be bound by any of the ordinances in evidence.

This point was not made in the circuit court. The ordinances were read in evidence without objection and after they were in the defendant moved to strike them out "on the ground that they are not made by their terms applicable to anybody but to the employees of the road." The motion was overruled and no exception was taken to the ruling.

We find no error in the record affecting the merits of the case and therefore the judgment is affirmed. *Brace, P. J.,* concurs; *Marshall* and *Robinson, JJ.,* dissent. The cause is therefore transferred to Court in Banc.